## UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

PHU CAO,                              )
                                      )
        Petitioner,                   )
                                      )
v.                                    )    Case No. CIV-25-1403-G
                                      )
                                      )
PAMELA BONDI, Attorney General,       )
et al.,                               )
                                      )
        Respondents.                  )

## ORDER

On November 22, 2025, Petitioner Phu Cao, appearing through counsel, filed a Petition for Writ of Habeas Corpus (the "Petition," Doc. No. 1) challenging his detention by U.S. Immigration and Customs Enforcement ("ICE") pursuant to 28 U.S.C. § 2241. In accordance with 28 U.S.C. § 636(b)(1), the matter was referred to Magistrate Judge Suzanne Mitchell for preliminary review. Certain Respondents[1] filed a Response (Doc. No. 11) to the Petition, and Petitioner filed a Reply (Doc. No. 14).

On December 24, 2025, Judge Mitchell issued a Report and Recommendation ("R. & R.," Doc. No. 15), recommending that the Petition be granted in part and Petitioner be

---

[1] Respondent Scarlet Grant, Warden of Cimarron Correctional Facility, has not appeared in this action or joined in the other respondents' filings. The appearing respondents are: Pamela Bondi, United States Attorney General; Kristi Noem, former U.S. Secretary of Homeland Security; Todd M. Lyons, Acting Director of ICE; Marcos Charles, Acting Executive Associate Director, ICE Enforcement and Removal Operations ("ERO"); Mark Siegel, Field Office Director for ERO; ICE; and U.S. Department of Homeland Security.

released from custody.  Respondents filed an Objection (Doc. No. 16) to the R. & R., to which Petitioner responded (Doc. No. 17).

Pursuant to controlling authority, the Court reviews de novo the portions of the R. & R. to which specific objection has been made.  *See United States v. 2121 E. 30th St.*, 73 F.3d 1057, 1060 (10th Cir. 1996); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3).

I.    *Background*

The factual background is set forth in the R. & R. and is not contested by either party.  Petitioner is a citizen of Vietnam and entered the United States in 1985.  R. & R. at 1.  Petitioner has been arrested for and convicted of multiple crimes while residing in the United States.  *See id.* at 1-2; Resp'ts' Resp. at 10-11.  Petitioner completed his most recent period of incarceration in December 2006.  *See* Resp'ts' Resp. at 11.

Petitioner was ordered removed by an Immigration Judge on February 22, 2007.  R. & R. at 2.  The order of removal became final that same day.  *Id.*  On August 31, 2007, Petitioner was released by ICE on an Order of Supervision ("OOS").  *Id.* at 2-3.

From 2007 to 2025, Petitioner complied with the OOS's requirements to appear for routine check-ins with ICE and updated his address, as required, whenever he relocated. *Id.* at 3.

Petitioner alleges that he has been wrongfully held in ICE detention since he was "picked up and redetained" while attending a "scheduled check-in appointment" on September 9, 2025.  Pet. ¶ 9.  Petitioner is currently housed at the Cimarron Correctional Facility, an ICE facility located in Cushing, Oklahoma.  *Id.* ¶¶ 17, 35.

## II.    Relevant Standards

"The Government's ability to detain, release, and revoke the release of noncitizens subject to removal orders is governed by specific regulations." *Phongsavanh v. Williams*, No. 25-cv-00426, __ F. Supp. 3d __, 2025 WL 3124032, at *2 (S.D. Iowa Nov. 7, 2025). Pursuant to 8 U.S.C. § 1231(a), the Attorney General "shall detain" a noncitizen who is ordered to be removed; this period of detention is referred to as the "removal period." 8 U.S.C. § 1231(a)(1)(A), (2)(A); *see also Zadvydas v. Davis*, 533 U.S. 678, 682 (2001) ("When an alien has been found to be unlawfully present in the United States and a final order of removal has been entered, the Government ordinarily secures the alien's removal during a subsequent 90-day statutory 'removal period,' during which time the alien normally is held in custody.").

Section 1231(a)(3) prescribes that when a noncitizen is not removed within this removal period, he or she may be released subject to "supervision" as set forth by relevant regulations. 8 U.S.C. § 1231(a)(3); *see* 8 C.F.R. §§ 241.4, 241.13. As relevant here, federal authorities may revoke an order of supervised release and "return the alien to custody" "if, on account of changed circumstances, [ICE] determines that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future." 8 C.F.R. § 241.13(i)(2). Alternatively, an order of supervision may be revoked if the noncitizen "violates any of the conditions of release." *Id.* § 241.13(i)(1). Revocation for either reason triggers a notification requirement and a review process:

> *Revocation procedures.* Upon revocation, the alien will be notified of the reasons for revocation of his or her release. [ICE] will conduct an initial informal interview promptly after his or her return to [ICE] custody to afford

3

the alien an opportunity to respond to the reasons for revocation stated in the notification.  The alien may submit any evidence or information that he or she believes shows there is no significant likelihood he or she be removed in the reasonably foreseeable future, or that he or she has not violated the order of supervision.  The revocation custody review will include an evaluation of any contested facts relevant to the revocation and a determination whether the facts as determined warrant revocation and further denial of release.

*Id.* § 241.13(i)(3).

### III.   Discussion

In the R. & R., after determining that the Court has jurisdiction to hear Petitioner's claims, Judge Mitchell concluded that Petitioner's detention is unlawful due to ICE's failure to follow required procedures in revoking Petitioner's OOS and that Petitioner therefore is entitled to release under 28 U.S.C. § 2241(c)(3).  *See* R. & R. at 10-13, 13-19; 28 U.S.C. § 2241(c)(3) (prescribing that habeas corpus relief is available to a prisoner "in custody in violation of the . . . laws . . . of the United States").[2]

#### A.   The Court's Jurisdiction

In the R. & R., Judge Mitchell, rejected Respondents' contention that certain provisions of 8 U.S.C. § 1252 deprive the Court of jurisdiction over Petitioner's habeas corpus claim.  *See* R. & R. at 10-13; Resp'ts' Resp. at 25-28.  Respondents object to this

---

[2] Based upon this determination, the Magistrate Judge did not reach Petitioner's remaining claims for relief or request for declaratory judgment.  *See* R. & R. at 19-21; Pet. ¶¶ 94-98, 104-113, pp. 28-29.

conclusion, again arguing that the Court lacks jurisdiction to hear Petitioner's claim.  *See* Resp'ts' Obj. at 3-5 (citing *Tazu v. Att'y Gen. of U.S.*, 975 F.3d 292 (3d Cir. 2020)).[3]

Section 1252 governs judicial review of orders of removal.  "Section 1252(g) strips courts of jurisdiction 'to hear any cause or claim by or on behalf of any noncitizen arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any noncitizen under this chapter.'"  *Jimenez Chacon v. Lyons*, No. 25-cv-977, __ F. Supp. 3d __, 2025 WL 3496702, at *4 (D.N.M. Dec. 4, 2025) (alterations omitted) (quoting 8 U.S.C. § 1252(g)).  The statute, however, does not "sweep in any claim that can technically be said to 'arise from' the three listed actions of the Attorney General."  *Jennings v. Rodriguez*, 583 U.S. 281, 294 (2018).  The Supreme Court has instructed that § 1252(g) instead "refer[s] to just those three specific actions themselves."  *Id.*  Addressing the term "arising from" in a related statutory provision, the Tenth Circuit recently explained: "A claim only arises from a removal proceeding when the parties in fact are challenging removal proceedings."  *Mukantagara v. U.S. Dep't of Homeland Sec.*, 67 F.4th 1113, 1116 (10th Cir. 2023) (discussing 8 U.S.C. § 1252(b)(9)).[4]

---

[3] Although Petitioner's criminal history is discussed by both parties while discussing the Court's jurisdiction, *see* Resp'ts' Obj. at 3; Pet'r's Resp. at 4-7, 8 U.S.C. § 1252 does not hinge jurisdiction upon any characteristic of the noncitizen.

[4] Prior to *Jennings*, the Tenth Circuit had stated that "claims . . . clearly . . . included within the definition of 'arising from' are those claims connected *directly and immediately* with a decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders."  *Tsering v. U.S. Immigr. & Customs Enf't*, 403 F. App'x 339, 343 (10th Cir. 2010) (alteration, omission, and internal quotation marks omitted) (interpreting 8 U.S.C. § 1252(g)).

Relying on *Tazu* and objecting to the R. & R.'s interpretation of that decision, Respondents argue that the "Court lacks jurisdiction to consider the validity of Petitioner's re-detention" because Petitioner has been "re-detained in order to execute his removal." Resp'ts' Obj. at 3-5.  Respondents also assert that "habeas petitions challenging an order of removal must be filed in the court of appeals."  *Id.* at 3.  Petitioner responds that *Tazu* is distinguishable and that § 1252 does not bar challenges to immigration detention because the relevant provisions have been construed narrowly.  *See* Pet'r's Resp. at 2-3.

To begin, Respondents' citation to the Third Circuit's *Tazu* decision is not persuasive in light of "the Supreme Court's consistent use of an exceedingly narrow construction on the jurisdiction channeling provisions" of § 1252.  *Montoya v. Holt*, No. CIV-25-1231-JD, 2025 WL 3733302, at *5 (W.D. Okla. Dec. 26, 2025); *see Ceesay v. Kurzdorfer,* 781 F. Supp. 3d 137, 153 (W.D.N.Y. 2025) (distinguishing the "*brief*" "door-to-plane" detention challenged in *Tazu* from a challenge to "ICE's ability to hold [the petitioner] in detention without adequate process for weeks and months on end").

Further, the Court independently concludes that its ability to consider the Petition is not barred by § 1252(g).  Petitioner is not seeking review of the Executive's decision to execute an order of removal.  Instead, Petitioner argues that he is "detained in violation of the INA" because "Respondents have failed to comply" with the applicable regulations "prior to redetaining [him]" after he was previously released on an OOS.  *See* Pet. ¶¶ 101, 103.  Petitioner therefore "does not ask the Court to second-guess Respondents' discretionary decision to commence removal proceedings against him."  *Lamas Aguilar v. Bondi*, No. 25-cv-00996, 2026 WL 84520, at *3 n.2 (D.N.M. Jan. 12, 2026).  Petitioner

instead challenges one of the "many other decisions or actions that may be part of the deportation process"—to which § 1252(g) is inapplicable. *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482, 486 (1999) ("It is implausible that [§ 1252(g)'s] mention of three discrete events along the road to deportation [is] a shorthand way of referring to all claims arising from deportation proceedings."); *see also Ceesay*, 781 F. Supp. 3d at 151 ("[D]etention under or in connection with a final order of removal always is related to the execution of an immigration order, but courts routinely hear habeas petitions filed by individuals subject to a final order of removal.").

Although § 1252(g) protects the Executive's prerogative to remove Petitioner, *see Reno*, 525 U.S. at 486, that protection does not preclude judicial review of whether the decision to revoke Petitioner's OOS (and order him to be detained) complied with applicable regulations. Petitioner had been released on an OOS, and the decision to revoke the OOS—a decision for which specific regulatory requirements have been adopted—is distinct from the mere execution of Petitioner's prior removal order. Accordingly, the undersigned concludes, as have multiple other district courts, that § 1252(g) does not defeat the Court's exercise of jurisdiction over a petitioner's claim that his current detention is illegal because he was not afforded the process required for revocation of his OOS.[5] Respondents' objection is overruled.

---

[5] *See, e.g.*, *Barrios v. Ripa*, No. 25-cv-22644, 2025 WL 2280485, at *5 (S.D. Fla. Aug. 8, 2025) ("[T]he Court . . . ha[s] jurisdiction to adjudicate whether Respondents complied with their own [OOS] revocation procedures."); *Ceesay*, 781 F. Supp. 3d at 152 (noting that district courts in the Second Circuit "have distinguished between challenges to ICE's

### B. ICE's Failure to Comply with Applicable Regulations

In considering Petitioner's habeas claim, Judge Mitchell concluded that Respondents did not comply with the regulatory requirements of 8 C.F.R. § 241.13(i) when redetaining Petitioner following his 2007 release on an OOS.  *See* R. & R. at 13-19.

#### 1. Respondents' Failure to Show There Was a Proper Basis for Revocation on September 9, 2025

The undersigned concludes that Respondents did not comply with the applicable regulations for an additional reason than does the R. & R.  In short, the record reflects that Respondents revoked the OOS and redetained Petitioner for a reason other than those permitted by 8 C.F.R. § 241.13(i).

Section 241.13(i) enumerates two reasons why an OOS may be revoked: 1) "[v]iolation of conditions of release," and 2) "[r]evocation for removal."  8 C.F.R. § 241.13(i)(1), (2).  According to § 241.13(i)(3), [u]pon revocation, the alien will be notified of the reasons for revocation of his or her release."  *Id.* § 241.13(i)(3).

According to Respondents, the basis for Petitioner's OOS revocation on September 9, 2025, was "his criminal history and Final Order of Removal."  Thompson Decl. (Doc. No. 11-1) ¶ 10.  When Petitioner was detained, a detention officer, Julio Guzman, "informed [Petitioner] that [the] reason for his detention is that he has a Final Order of Removal and an aggravated felony conviction."  Guzman Decl. (Doc. No. 11-3) ¶ 4.[6]

---

discretion to execute a removal order, which are barred, and challenges to the manner in which ICE executes the removal order, which are not").

[6] Petitioner represents that Deportation Officer Guzman did not inform him of any reason for his detention.  *See* P. Cao Decl. (Doc. No. 14-1) ¶ 1 ("[Officer Guzman] did not explain to me why I was detained.").  Petitioner also disputes other statements that Officer Guzman

These reasons, taken either individually or together, do not reasonably show that the determination to revoke Petitioner's OOS was made because Petitioner violated a condition of his release or because, "on account of changed circumstances, [ICE] determine[d] that there [was] a significant likelihood that the alien may be removed in the reasonably foreseeable future." 8 C.F.R. § 241.13(i)(1), (2). Respondents have not argued that Petitioner violated a condition of his release. And, since 2007, Petitioner's criminal history has not changed and his final order of removal had been in place, so it cannot be plausibly argued that mention of these two factors is a shorthand for changed circumstances that supported a determination in September 2025 that Petitioner's removal had become significantly likely.

In addition, the R. & R. concludes that "Respondents have failed to demonstrate . . . that they made the required determination for revocation under § 241.13(i)(2) *before* redetaining Petitioner." R. & R. at 16 (emphasis added). As noted by Judge Mitchell, this timing of the "changed circumstances" is crucial: "ICE is not permitted to hold [Petitioner] indefinitely while it waits for travel documents from Vietnam." *Tran v. Bondi*, No. C25-01897, 2025 WL 3140462, at *3 (W.D. Wash. Nov. 10, 2025); *accord Ambila v. Joyce*, No. 25-cv-00267, 2026 WL 184751, at *3 (D. Me. Jan. 24, 2026) ("The Government should

---

attests to making to Petitioner. *See id.* Without deciding which version of events is correct, the Court reaches its conclusion as to the improper basis for revocation by reference to the reasons Officer Guzman identifies as having been told to Petitioner. Relief would likewise be warranted, however, if Officer Guzman did not provide any reason to Petitioner.

not be permitted to hold Mr. Ambila indefinitely while it seeks new travel documents that may or may not be sufficient to facilitate his removal to the DRC.").

Although Respondents argue that the circumstances have now sufficiently changed to permit the revocation of Petitioner's OOS, they do not squarely dispute Judge Mitchell's finding that Respondents have failed to show that this change occurred prior to the redetention or show any error therein. *See* Resp'ts' Obj. at 9-10. Respondents point to a general indication that removals to Vietnam were likely because removals were occurring more frequently in 2025 than in recent years. *See id.*; Thompson Decl. ¶¶ 12-13. This vague understanding does not satisfy the § 241.13(i)(2) determination of "a significant likelihood that *the* alien may be removed," however. 8 C.F.R. § 241.13(i)(2) (emphasis added); *see Pham v. Bondi*, No. CIV-25-1157-SLP, 2025 WL 3243870, at *2 (W.D. Okla. Nov. 20, 2025) ("Respondents provided no evidence of progress they made towards removal of Petitioner himself before re-detention."). And it was not until November 3, 2025—almost two months later—that "Cao's Travel Document Request was submitted to ICE headquarters," which was "actively working with the State Department to remove Cao to Vietnam." Thompson Decl. ¶ 11. As correctly recognized by the R. & R., the United States Government's internal efforts in November 2025 do not demonstrate that any change regarding the likelihood of Petitioner's removal occurred prior to Petitioner's redetention on September 9, 2025. *See* R. & R. at 17; *Ye v. Bondi*, No. CIV-25-1230-D, 2025 WL 4034264, at *5-6 (W.D. Okla. Nov. 18, 2025) (R. & R.) ("There is nothing about local ICE authorities sending a travel document request for Petitioner to a particular ICE department

that constitutes 'changed circumstances' making his removal any more likely than it ever was."), *adopted in relevant part*, 2025 WL 3485420 (W.D. Okla. Dec. 4, 2025).

2.   *Respondents' Failure to Comply with Procedural Requirements*

In the R. & R., Judge Mitchell concluded that Respondents did not provide written notice as required and did not provide an informal interview as required.  *See* R. & R. at 13-19.  Respondents object, arguing that written notice is not required, that it is within Respondents' discretion to make the requisite determination to revoke Petitioner's OOS, and that the determination was properly supported as shown by the record in this case.  *See* Resp'ts' Obj. at 6-10.

Without deciding whether written notice was required, the verbal notice that Petitioner received upon his revocation did not comport with Respondent's own regulations because that notice did not cite a reason enumerated in 8 C.F.R. § 241.13(i).  *See* Guzman Decl. ¶ 4.

Regarding Petitioner's interview, § 241.13(i)(3) requires "an initial informal interview promptly after . . . return to [ICE] custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification."  8 C.F.R. § 241.13(i)(3).  This interview allows for the noncitizen to "submit any evidence or information that he or she believes shows there is no significant likelihood he or she be removed in the reasonably foreseeable future" "or that he or she has not violated the order of supervision."  *Id.*  There is no indication in the record that Petitioner received the required interview.  *See* R. & R. at 16; Pet. ¶ 55 ("[N]or does [Petitioner] recall having been given any sort of informal interview to challenge the Notice.").  Respondents contend that Petitioner's inability to

recall whether he was given an informal interview undermines his ability to maintain this claim.  *See* Resp'ts' Obj. at 8 & n. 29.  Respondents fail to establish, however, that such an informal interview would cure the improper redetention of Petitioner.  *See Hamidi v. Bondi*, No. CIV-25-1205-G, 2025 WL 3452454, at *3 (W.D. Okla. Dec. 1, 2025).

### 3.  Summary

Respondents' discussion of how the circumstances related to removals of individuals to Vietnam have changed and allegation that such removals are now much more frequent are beside the point.  Respondents did not comply with their own regulations when revoking Petitioner's OOS by making the required determination prior to his revocation, informing him of a valid reason for his revocation, or providing a prompt opportunity to challenge the determination and his revocation.  Respondents' objection is overruled.

## C.  Remedy

### 1.  Release

After concluding that Respondents violated the INA, Judge Mitchell recommended that Petitioner be released subject to his previous OOS.  *See* R. & R. at 18-19.

Respondents object, arguing that the Court should adopt the harmless error standard and that a regulatory violation does not warrant habeas release because a regulation is not a law.  *See* Resp'ts' Obj. at 11-14.  Petitioner argues that Respondents' authority is distinguishable and incorrect in its conclusion.  *See* Pet'r's Resp. at 13-14.  Petitioner also argues that relief in the form of release is the proper remedy for an unlawful detention.  *See id.* at 11-12.

This Court, in agreement with the majority view, has "found that such regulatory defects amount to due process violations that entitle a petitioner to habeas relief." *Hamidi*, 2025 WL 3452454, at *3-4 (internal quotation marks omitted); *see also Pham*, 2025 WL 3243870, at *1. This matter is distinguishable from *Bahadorani v. Bondi*, No. CIV-25-1091-PRW, 2025 WL 3048932 (W.D. Okla. Oct. 31, 2025), *appeal docketed*, No. 25-6177 (10th Cir. Nov. 4, 2025). Unlike in *Bahadorani*, where the petitioner was "provided the reasons for his detention" and "an interview related to a review of his detention," *id.* at *3, Respondents here failed to provide proper § 241.13(i)(3) notice to Petitioner or any meaningful opportunity to challenge his revocation, *see Hamidi*, 2025 WL 3452454, at *3-4.

Based on the facts and circumstances of this case, the undersigned concurs that Respondents' violation of § 241.13(i) denied Petitioner the process to which he was entitled by law and that such a denial entitles Petitioner to habeas relief. *See Hamidi*, 2025 WL 3452454, at *3.

### 2.  *Injunctive Relief*

Beyond release from detention, Petitioner seeks injunctive relief in the form of prospective restrictions on Respondents' ability to remove him to third countries or redetain him pursuant to 8 C.F.R. § 241.13(i). *See* Pet. at 28-29. Respondents oppose the issuance of such relief because the issues are not yet ripe for decision and are beyond the scope of habeas relief. *See* Resp'ts' Resp. at 35-36. Judge Mitchell recommended that Petitioner's requests for permanent injunction of potential future conduct of Respondents be denied. *See* R. & R. at 19-20. Petitioner also seeks to have the Court alter the terms of his OOS.

*See* Pet. at 29.  Judge Mitchell notes that altering Petitioner's OOS would intrude on the executive's authority to set the terms of an OOS.  *See* R. & R. at 19 n.4; 8 U.S.C. § 1231(a)(3).

The Court agrees with Judge Mitchell's recommendation as to Petitioner's requested permanent injunctive relief and alteration of his OOS.  As such, these requests are denied. *See Funes v. Francis*, No. 25 Civ. 7429, __ F. Supp. 3d __, 2025 WL 3263896, at *26 (S.D.N.Y. Nov. 24, 2025).

### 3.  Fees and Costs

Petitioner requests "reasonable attorney fees and costs pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412(d)(1)(A)."  Pet. at 29.  "The Tenth Circuit recently held that the [Equal Access to Justice Act] 'unambiguously authorizes fees in habeas actions challenging immigration detention.'"  *Marin Ramos v. Dedos*, No. 26-cv-00264, 2026 WL 555338, at *8-9 (D.N.M. Feb. 27, 2026) (alteration omitted) (quoting *Daley v. Ceja*, 158 F.4th 1152, 1166 (10th Cir. 2025)).  However, these fees must be sought in accordance with the requirements of the Equal Access to Justice Act and by separate motion.  *See id.*; Fed. R. Civ. P. 54(d), (2), 81(a)(4); LCvR 54.2.

## CONCLUSION

As set forth herein, Respondents' failure to comply with 8 C.F.R. § 241.13(i) resulted in the unlawful detention of Petitioner.  Habeas corpus relief is warranted.  *See* 28 U.S.C. § 2241(c)(3); *Zadvydas*, 533 U.S. at 690 ("Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty [the Due Process] Clause protects.").

In accordance with the above, the Report and Recommendation (Doc. No. 15) is ADOPTED as modified.

IT IS FURTHER ORDERED that:

1. The Petition for Writ of Habeas Corpus (Doc. No. 1) is GRANTED to the extent it requests habeas release pursuant to 28 U.S.C. § 2241.[7]

2. Petitioner's remaining claims are DISMISSED without prejudice.

3. Respondents are directed to either:

    a. Within three (3) days of the date of this Order, provide Petitioner Phu Cao with notification of the reason for his revocation pursuant to 8 C.F.R. § 241.13(i)(1) or (2), and thereafter the prompt scheduling of an informal interview as an opportunity for Petitioner to respond to the reasons for his revocation pursuant to § 241.13(i)(3); or

    b. Immediately release Petitioner Phu Cao into the United States, subject to the terms of his previous Order of Supervision

4. Respondents shall submit a declaration pursuant to 28 U.S.C. § 1746 within five (5) days of the date of this Order affirming either Petitioner's release from custody into the United States or that the prescribed notification has been served on Petitioner.

5. The Court will separately enter Judgment in favor of Petitioner but retain jurisdiction over this matter to ensure compliance with this Order and to entertain any motion for attorneys' fees. Petitioner shall have 45 days from the date of this Order to file any motion seeking fees.

IT IS SO ORDERED this 6th day of March, 2026.

*Charles B. Goodwin*

CHARLES B. GOODWIN
United States District Judge

---

[7] The undersigned's conclusion herein does not foreclose the possibility that the occurrence of events affecting the likelihood of Petitioner's removal in the reasonably foreseeable future could constitute "changed circumstances" as contemplated by 8 C.F.R. § 241.13(i)(2).